The first case on the call this morning is agenda number 16. In re J.M.A., a minor. People of the State of Illinois versus J.M.A. Mr. Demetrios, George Golfis, you may come forward. Good morning, Your Honors. I'm Demetrio Golfis. I'm from the Office of the State Appellate Defender, and I represent J.M.A. May it please the Court, Counsel, this Court shall reverse the appellate court's judgment because the sentencing judge violated the Juvenile Court Act in two ways when it sentenced J.M.A. to a period of incarceration within the Department of Juvenile Justice. First, the judge failed to find, either explicitly or even implicitly, that a sentence to the department was the least restrictive alternative available for J.M.A. Second, the judge failed to review services within the department that would meet J.M.A.'s individualized needs, most notably his need for mental health treatment. Now, because J.M.A. has already finished serving his sentence and has been discharged by the department, in order for this court to review these issues that have been raised, it must first conclude that the public interest exception to the mootness doctrine is satisfied. My plan today is to first explain why the public interest exception applies. I'll then turn to why this Court should conclude that a court must explicitly find that the department is the least restrictive alternative before sending a child to incarceration at the department. And then finally, I'll address why it cannot be inferred from this record that the trial judge concluded that the department was the least restrictive alternative available. Although the last issue concerning a review of services is important and merits the Court's attention, I'll be submitting that issue to the Court on a brief loan. However, if Your Honors have any questions about that issue, I'm more than happy to answer them. Before I turn to the legal issues that have been raised, I'd like to briefly address a couple of important matters that are related to this case. This case is about more than just the legal issues that have been raised. It's about a lack of compassion and a lack of understanding. An underprivileged child with behavioral mental health disorders who was 14 years old at the time of his offenses, which is old enough to be in eighth grade, was sent to live with delinquent adults in the Department of Juvenile Justice, which is a place known to do more harm to children than good, especially children with mental health disorders. While his behavioral mental health disorders, which were known to be neglected his entire life, which can lead to bad behavior and delinquency when they are neglected, were ignored by our juvenile justice system. Now, ironically, the people in this case who had perhaps the greatest motivation to see JMA incarcerated actually showed him the most compassion and understanding. And those were the victims. And if Your Honors would bear with me for just a moment, I'd like to read a portion of one of these victims' victim impact statements. This particular victim said the following, these kids come from a cycle, and it needs to be broken. They are young enough that there is still a chance. I'm asking instead of making these kids another burden on taxpayers, by putting them in detention centers just to be released after X amount of days, months, or years, and put back on the streets to commit the crimes as adults, that you put them to work in county-run facilities. Your Honors, this victim sounds an awful lot like a compassionate and understanding parent, prioritizing community-based solutions over incarceration, which was the role that the state was supposed to play in this case, but did not. This victim understood that locking up JMA was not the answer, and that when you lock up a child in the department, you are essentially giving up on that child. You are furthering the pipeline of delinquent children turning into criminals as adults. Six days... Moving forward, counsel, what rules should we enunciate in deciding this case as far as what trial judges must do to meet the requirements of the statute? We are asking that this court hold that before a sentencing judge commits a child to the Department of Juvenile Justice, it must first make an explicit finding that the Department of Juvenile Justice is the least restrictive alternative available for that particular child. And that must be articulated verbally or in writing, or both? It could be either verbally or in writing. Of course, generally speaking, courts speak orally in the words they use in pronouncing the sentence, so we'd prefer it to be orally. I think it would be sufficient if the record shows that the judge actually found in writing that... Because I know that in the commitment order there are some blank spaces on least restrictive alternative, but you're not promising your argument on that alone. No, that commitment order is a pro forma order, and it has the least restrictive alternative finding language preprinted on that order. So every time a judge, a sentencing judge, uses that order, that language is going to show up, regardless of whether the judge actually made the finding or not. And there's no handwritten marking indicating, there's no checkmark like there are in other portions of that pro forma order indicating the judge actually made the finding. It's just preprinted and underneath it were spaces for the courts to comment further on that finding, and those spaces were left blank. So it's your position that the judge's decision to use that order is not going to use that form as opposed to a different form? Correct. Correct. Absent some mark on that form indicating that the judge actually made that finding, which there isn't in this case. Does that presuppose that there are no other forms that are available that don't have that language? Or does the record indicate that? I don't know whatever forms are available. But to further touch on Justice Garment's question of what we're asking for, we believe that the plain language of the Act actually requires that. And there are two sections that we're relying on. The first is Section 5705 of the Act. And the language that the legislature used is the following. When commitment to the Department of Juvenile Justice is ordered, the court shall state the basis for selecting the particular disposition, and the court shall prepare such a statement for inclusion in the record. And a second provision of the Act, Section 5-750, says that in order for a court to send the child to the department, it must find that certain facts exist. And one of those facts is that the department is the least restrictive alternative available. So in other words, the one of the bases or reasons for a judge to select the disposition of incarceration in the department must be, as a matter of law, that the department is the least restrictive alternative available. Counsel, didn't the trial court actually make that finding, at least on the motion to reconsider? After the court was presented with that issue, the court enunciated, we're here on this issue of least restrictive services, and then went on to explicitly state all the services, well, not all, but many of the services that were given to the minor, and they failed. No, absolutely not, and I'll tell you why. We can actually start at what happened at the sentencing hearing, because that's really what we're looking at. At the sentencing hearing, the judge didn't consider or rule out any alternatives on the record. He simply said, I've looked at the alternatives that can be imposed. That's not the same thing as finding that the department is the least restrictive alternative available. Moving forward to the motion to reconsider sentence, at that hearing, the judge said, they have attempted the least strenuous and severe sentences to try to rehabilitate JMA. Well, those were two things, probation and hold detention with electronic monitor. Those were the only prior sentences that he had, so the judge was only referring to two. He then said that the IDOJJ is the most appropriate sentence under the circumstances. But he did consider a residential treatment also, correct? He considered short-term detention in a detention home such as Mary Dave's, which may or may not include mental health treatment. He didn't comment on JMA receiving mental health treatment. Were you done answering his question? Yes. You referenced in answering his question about, I think you said something about no evidence of alternatives was offered. Did you say that, or did you mean to say that? I said at the original sentencing hearing, the judge did not rule out any less restrictive alternatives. There certainly was evidence of less restrictive alternatives used in the past, and that came from his sentencing history for past offenses, and he received probation and home detention with electronic monitoring. So we're not arguing that the judge did not consider evidence of less restrictive alternatives. We're arguing that he did not make an explicit finding that the Department is the least restrictive alternative available. Those are two different requirements of Section 5-750. And what really the trial judge did here, and the majority of the appellate court did, was it conflated the two requirements. It said that, okay, there's evidence that the judge considered less restrictive alternatives, and the judge sentenced him to the Department, therefore, the judge actually made the finding that the Department is the least restrictive alternative available. But that's not the same thing. You can't just consider less restrictive alternatives and then jump to the conclusion that the judge found the Department to be the least restrictive alternative available. In the absence of either an explicit finding of the judge saying that the Department is the least restrictive alternative available, or if we don't have an express finding, then we need to see from the record that the judge has actually ruled out every alternative that is less restrictive and committed to the Department. Otherwise, as a matter of common sense and logic, we don't know that the judge has found that the Department is the least restrictive alternative available. Counsel, would it be enough for the court to simply say, I find that a commitment to the IBOJJ is the least restrictive alternative? Is that enough just to make that finding on the record? It's enough to satisfy that requirement that that finding be made in general. Of course, there are other requirements in Section 5-750 that the judge has to meet, such as receiving evidence of less restrictive alternatives and considering less restrictive alternatives. So if a judge just makes that finding, I find the Department's the least restrictive alternative available, but the judge never received evidence of less restrictive alternatives, and there's no consideration of less restrictive alternatives, that would violate a different part of that section. So must the judge also find the evidence or state the evidence he received to make that finding? The case law from the Appellate Court, and I believe I think the first case that comes to mind is the Justin F. case, where there was some evidence in the record of less, I think just a couple less restrictive alternatives that had been tried in the past and failed in prior cases for that child, and the Court held that that's sufficient to show that the judge considered evidence of less restrictive alternatives. We agree with that based on that precedent. We're not challenging that. But generally speaking, you need evidence. The judge of some less restrictive alternatives that either have been unsuccessful in the past or an explanation as to why they would be unsuccessful now, and then you need the finding that the Department's the least restrictive alternative is available. Mr. Kalkholz, isn't it you are saying, too, it's the fault of the juvenile intake officer for not considering Respondent's mental conditions. So that's evidence, actually, it's the fault of the mother, because she didn't provide any of that for the Court. She did. Initially, she did not. She did after the fact and the juvenile intake officer. Well, I mean, in making the decision, the judge didn't have the information. He did, because there was an addendum. There was what? There was an addendum to the social history report that the juvenile intake officer added right before sentencing, and that was a short, it was about a page and a half documentation of his mental health history dating back to the age of three. Interestingly, the juvenile intake officer did not alter the social history report that she had prepared prior. She did not alter it based on what she found in terms of his mental health history. She just did the addendum but did not update the risk factors to show that his mental health disorders were risk factors, and she didn't alter her sentencing recommendation. She just said this child has bad behavior and the Department of Juvenile Justice is where he should go. She said nothing as to his mental health conditions. So what was the judge supposed to do? The judge was supposed to have the insight and the understanding to say, okay, I have documentation for me showing that this kid has oppositional defiant disorder, has ADHD, may be bipolar. These disorders affect his behavior. He needs mental health treatment, particularly where the social history report shows that a court had never ordered that he receive mental health treatment in the past. But he did, but he didn't participate. I mean, he did have opportunity for mental health services and didn't participate. Not court ordered, and he didn't participate. I mean, he was a young child, and that's not entirely on him. I mean, the mother needs to take responsibility. There were a lot of things going on. I mean, this is a very troubled child. He grew up in a single-parent household. He has behavioral disorders since the age of three. His three cousins have been killed. His brother was shot at the age of five. His sister, younger sister, was kidnapped in his mother's car when her car was stolen. And that happened in July of 2018 while he was attending the Safer Foundation Impact Program. And that's why suddenly in July of 2018 his attendance there clunked, because his mom's car had just been stolen and his sister had been kidnapped. So we need to look at the big picture, and we can't just blame everything on this child and blame everything on the mom as to why he didn't get it. I mean, his mom was working essentially a minimum-wage job. But when she was working, when she wasn't working, she's relying on his disability benefits as a source of income. So we can't just place all of this on the child. And it would be wonderful if this child received consistent mental health treatment over a period of time that he's never received, and that would suddenly make him no longer behave delinquently. I mean, that would be a victory not only for him, but for our juvenile justice system and the people of the state of Illinois if a judge actually takes a step, recognizes this kid needs mental health treatment, orders it, and he gets better. That would be fantastic. And to kind of go further on that point, how can it be said that the Department of Juvenile Justice was the least restrictive alternative available for JMA when he has these neglected mental health disorders and, of course, never ordered that he receive treatment? Counsel, does the court, does the juvenile court have to try every alternative means prior to justifying a commitment to the Department of Juvenile Justice? I wouldn't say that it has to try them, but certainly the judge has to rule them out and find that they're unavailable or not suitable for the child. For example, the child may not qualify for a juvenile impact incarceration program because there are certain requirements in the statute that must be met. Or maybe a facility that houses delinquent children that specializes in mental health treatment may not accept him. So the judge needs to consider and rule those out. It doesn't have to actually try them, but they have to be ruled out. And whose burden is it to present the court with that evidence or that information? I think when it comes to considering the sentencing alternatives, really it's the burden of the juvenile intake officer when they give a sentencing recommendation. It's the burden of the prosecutor. The prosecutor is going to recommend that the child be sent to the Department of Juvenile Justice. You would think that the prosecutor presents evidence of why it's the least restrictive alternative. If defense counsel wants to argue that the Department is not the right place, you would think that defense counsel presents evidence showing that there's less restrictive alternatives that are available. But ultimately it falls on the judge. The judge needs to make sure that he or she is complying with the statute and what the statute requires. And then what's required on what's available at the Department of Juvenile Justice? Is that incumbent upon the state or the respondent, or are the judge supposed to just articulate that? Can you talk to me about that? Sure. The judge, by statute, has to review services that will meet the child's individualized needs. We're arguing that the judge can't do that unless the judge has evidence of the services that are offered at the DOJ. I see that my time has run out, but I'd like to finish answering Your Honor's question. I think that the process is always very, very restrictive. Preferably, the juvenile instinct officer and the prosecutor would be the ones who are giving the court the evidence, showing what services are available at the department. Of course, the judge is always free to take judicial notice of things, which did not happen here. Realistically, you're not going to see a defense attorney presenting evidence because you're not going to have a defense attorney recommending that his or her client wants to be sent to the department. Thank you.  Thank you. Good morning, Your Honors. My name is Nick Moeller of the Illinois Office of the Attorney General, and I'm here on behalf of Respondent. May it please the Court, opposing counsel. I think it's important to take a step back and look at the question that's actually before the Court today. This is not a case about whether it was an abuse of discretion for the judge to give the sentence that he gave. It's not an excessive sentence challenge. And any issues into the specific repercussions for this Respondent are moot because he's already served his sentence, and there's no remedy along those lines that can be given to Respondent. We're here to ask the legal question of what was required of the trial court. And to do so and to uncover the answer, it's best to look at what was before the trial court during the sentencing here. The trial court heard that over the course of little, I believe little less than a year, Respondent had stolen or taken part in stealing four vehicles. He had attempted to break into two other cars. Over the course of this year, in between these offenses, Respondent was first put into a diversionary program to avoid the legal system. But after that, shortly after that's when he stole his first car. He was then put on probation. That didn't work. He was put on home arrest. He cut off his monitor and fled the State. He continued to steal cars. It escalated to the incident in the case in question where he was found knowing where the stolen car was and had a firearm on him. So over the course of this year, the judge is looking at this Respondent. He keeps running away from home. He keeps committing crimes. And every type of sentence that courts have handed out to him has not worked to rehabilitate this individual. His mother admits that she can't control him. She's had trouble getting him to the medical services he needs. The court, taking all of this into account, said, I find commitment to the IDOJJ is necessary. Now, the statute at issue today, Section 5-750, states the court must find that commitment is the least restrictive alternative. It does not say it must explicitly find. It does not say it must expressly find. So on the plain language of the statute, to require an explicit finding using specific words would require adding that word express, that word explicit, into the statute. And it's not there. Respondent tries to look to Section 5-705, which notes that the court must state the basis for selecting the particular disposition. But there's no requirement that the court use any specific words in that section of the statute, either. And it's very important that the statute does not require specific words by the court, because that's not the purpose of the judicial of the Juvenile Court Act. The purpose of the Juvenile Court Act, as it was amended, was to make sure that every juvenile gets an individualized assessment of their situation, and the court, taking everything about the individual circumstances, the crime, and possible rehabilitative measures available, come to an individualized understanding of what's best for the juvenile. That's not something that can be handled on a checklist. It's not something that can be handled by merely stating, I find this is the least restrictive alternative. What the Act had in mind, and what happened here, was the judge considered all the evidence, and then gave a reasoned statement of why he was choosing the particular disposition he did. It became even more clear at this resentencing hearing, no, I'm sorry, at the motion to reconsider hearing, because the court was faced with the exact question on appeal today, why didn't you say explicitly this was the least restrictive, least restrictive available option. And the court, being asked that question, said, well, I've looked at all what was tried before. He listed the less restrictive things that had been tried, and he noted they didn't work. He noted the child's home life and how that was not, it was not suitable for the juvenile's rehabilitation, and the court said, I think commitment is the most reasonable sentence that this Court could impose under all the circumstances. So this Court looked at less restrictive alternatives, was able to not just consider them as hypotheticals, saw how they had actually failed with Respondent, and at the sentencing hearing, he said commitment was necessary. At the motion to reconsider hearing, he said it was the only reasonable option. Or, I'm sorry, it was the most reasonable option. Short of requiring the court to read the statute words verbatim, this was a finding that commitment is the less, least restrictive alternative available. No other alternative was going to work. Now, Respondent has made the argument that in order for us to be able to tell what the court actually found without him saying these magic words, we have to, the court would have to go through each and every alternative available. That just doesn't logically follow, and it would not be a good use of the Court's time. For some of the options available, they don't really work for every Respondent. As the appellate court noted, there are things like tattoo removal or taking away an individual's license, which just would not, were not relevant to this case. There's also a logical step that has to be taken. If the court is looking at a spectrum of available punishments, dispositions, and the court looks at one that is fairly restrictive in probation with an ankle monitor, and it says that's not enough, one can reasonably presume that the court would also be finding that anything less restrictive, that that probation with an ankle monitor is also not going to be enough. In this case, the court not only looked at those earlier probations, the court looked at what was probably the most restrictive step possible short of commitment to the IDOJJ, and that was the court said, I've looked at detention in this home. And I think that's probably what Respondent needs. They just can't give him enough time to do it. And so the court found that lesser restrictive alternative, that was not going to be available. And it logically follows that if something that restrictive isn't enough to rehabilitate, isn't going to work with Respondent, that everything less than that step also wasn't going to work. Sotomayor, the appellate court here, I believe, said that the finding could be inferred. Yes, ma'am. And there's a conflict with a couple of our appellate districts that said it has to be an express finding. I ask your opposing counsel, what does the what is required of the trial court in making these findings going forward? What's your response to that? I think it would be the same requirement of most findings, most decisions made by the trial court where it has to state a reasoning. It has to give its reasons. Those reasons have to show support for what the court is finding. In this case, the court did just about everything it could short of using the exact words of the statute. This is probably the best case scenario for looking at what the court could have said short of reading off the pre-written order. I don't know that this is a case for a bright-line rule, a rule that's able to say the court only has to say this amount of things and that's enough, because the whole point of the Juvenile Court Act is to give individualized assessments. It's to give case-specific reasonings that are quite they're further beyond what you see in a lot of other circumstances, and that's intentional in the Juvenile Court Act. And so because this is meant to be such an individualized indication, a bright-line rule around the specific words the court has to say goes against the framework set out by the legislature. So the cases that say there has to be an express finding are incorrect? Yes, Your Honor. The State believes that in order to affirm the appellate court of the – in today's case, it would be a – it would have to require overruling the two other appellate court cases because they are in direct contradiction. Because those cases, like Respondent is requesting today, viewed the plain language of the statute to say that the court must expressly find. They require magic words, and that requirement is not in there. And beyond the plain language, you can also look to other sections of the Juvenile Court Act where the legislature made clear that it knew how to state that the court had to say something specifically. The finding of guilt in juvenile proceedings, in that section, Section 5-620, the legislature used the language that a court must make a note of finding. So it's not just that the court – the appellate courts in the other cases were adding a word that was not in a statute. They were adding a word that wasn't in a statute in a framework of statutes where the legislature had shown it knew how to put that requirement in. And that requirement simply isn't here today. Sotomayor. Counsel, you mentioned the litany of – you referenced the litany of offenses committed by this Respondent juvenile. Did those come before the same trial court judge? That I do not know, Your Honor. But they – so I do not know if the same – This was judged as soon as, wasn't it, it signed the sentencing? Yes, I believe. And I don't know if it was the same judge that signed the earlier sentencing orders. I do know, though, that they were contained in the report that was before the judge. So the judge had knowledge of these prior things and actually makes reference to most of them at the hearing on the motion to reconsider. Well, how many times in the record does it show that the juvenile was before the court prior to this original sentencing hearing that issue in this case? I'm sorry. Four or five times. I don't know the individual court dates. Largely, the record shows – Well, I'm not asking for the date. No. I'm sorry, Your Honor. I mean, I don't know how separated out they were, other than I know there were two separate probations ordered. Part of the difficulty in finding a sentence to rehabilitate the individual in this case is that all of these happened in such a short time span and happened in such a short period of time that it is hard from the record to be able to pinpoint exactly which instance was a separate legal determination. But I can say there were at least two separate probations within that chain. And then there was this third the following year, but within one 365-day period. Counsel, do you agree with the holding, at least in part, in H.L., that it's not enough for the record to support a finding that's not made? In H.L., there was no finding made whatsoever. And the argument from the State was that the record supported such a finding, even though the trial court didn't make that finding. I think in that question, assuming that the make of finding means did not state I'm not going to make that finding, I think the court would be wrong, the appellate court was wrong in that instance, because this court has recognized there are explicit findings and there are implicit findings. There may be cases where the trial court doesn't use the word I find or where the trial court uses different language, and it becomes a harder question of can we look at the evidence that the court was actually finding based on its language. That question is not that question doesn't rise in the current case, though, because the court did say so much and did say what it was finding. And I think, again, that would be a very fact-specific question, and it would be hard to it's the same reason it's hard to come up with a clear, bright-line rule. It's because we're dealing with one of the most individualized and fact-intensive areas of the law, and so bright-line rules are not as suited for this type of application. I'd like to briefly touch on the second issue before the Court of whether the Court considered different medical services available at the IDOJJ before rendering its decision. I first note and rely largely on the brief that this issue is moot and as a fact-based issue is not subject to the same exceptions that the statutory interpretation issue is. But more importantly, it should be noted that in the record, the Court was shown that while Respondent had some mental health difficulties in his life, the only things evident from the record that had been prescribed or put forth as solutions by the experts was meeting with psychiatrists and a prescription that he was receiving. There's been no argument and there is no argument that the IDOJJ doesn't have the services necessary to deal with Respondent's mental health as put forth by the record. So we're not talking about an actual harm here. We're talking about a procedural, did the court specifically go through things. The court, looking at the record, knowing that Respondent had been told to see a psychiatrist to speak with a psychiatrist, did not have any indication that Respondent would need any further individualized care than might be necessary of any individual, any juvenile interacting with the judicial system. This is not a case where it was clear that there was some extraordinary treatment or solutions required. So without further indication in the record to the trial court that Respondent had special needs that required special individualized services, there was no need to seek further evidence. And so for that reason, the second issue is also meritless. So unless there are further questions. I've got a follow-up question on a different topic. A follow-up on Justice Garland's earlier question to the opposing counsel. Does the defense counsel have an obligation to raise this least restrictive issue to the judge at the time of the original sentencing? The least restrictive issue? I believe it would be as similar to what Respondent said. It would be all parties involved have some impetus, whether it's the judges knowing the law and following the law, whether it's the State attorney seeking to make its case and then the defense attorney providing effective service, all had a need to bring up the issue as it arose. And it did arise in the motion to reconsider. And that is why the record is so clear as it is, because this question was brought before the trial court. It gave its answer, and its answer, even if the sentencing hearing had not been enough, the reasoning and explanation from the motion to reconsider would have cured any error and made clear that, yes, this Court found commitment was the least restrictive alternative. So with that, we would ask that the Court affirm the judgment of the appellate court. Thank you. Thank you. Mr. Goldfuss. I have a few important points I'd like to make in response to counsel's arguments. The record shows that he absolutely does need special services. If you look at the mom's testimony at the sentencing hearing, she actually testified that he was seeing a doctor in Davenport, and that doctor said that her facility was not sufficient to treat him because his mental health needs were out of her league. If you look at the addendum to the social history report, it shows that he was recommended for intensive therapy. The second point is, what a judge says is the most reasonable sentence or the most appropriate sentence or even the most necessary sentence is not the same thing as the least restrictive alternative available. A judge could conclude that a sentence to the department is necessary to protect the public, but that doesn't mean it's the least restrictive sentence available for that child. The main reason why an explicit finding should be required is because that finding is needed to show that a sentence to the department is actually authorized by law. The sentencing scheme for children is different than what we have for adults. And that's best illustrated by when we compare how you and I would determine whether an adult sentence is authorized by law versus a child sentence to the department. Generally, for an adult, we're looking at, okay, what is the offense, what is the class of the offense, what is the legislative set range for that class, and then you look to see does the sentence fall within that range. You're looking exclusively at statutes. For children, Section 5750 says a judge can order a child to a department if it finds certain facts to be in existence. Those facts are essentially conditions precedent to sentencing a child to the department. So we're not just looking at a statute to determine whether a sentence of a child to a department is authorized. We're looking to the findings that a judge makes. And that's why we need those findings to be made explicitly. Even if we require an explicit finding, sentencing a child is still going to be individualized because you need evidence showing that the judge can serve and ruled out less restrictive alternatives, and the judge is still going to run through and review all the individualized factors that are spelled out in Section 5750. There are, of course, things that are more restrictive than a 30-day detention at Mary Davis. You could have a much longer period in a residential facility that treats mental health, that specializes in treating delinquent children. He could be sent there until his 21st birthday as long as the facility or the institution agrees to that. You could have intensive impact incarceration or boot camp until his 21st birthday, coupled with mental health treatment. Interestingly, when the State cites Section 5620 as an example of part of the Juvenile Court Act requiring an explicit finding, the language used in that section is actually very, very close to the language used in Section 5705. The language used in Section 5620 is the court shall make a note in the minutes of the proceeding. The language used in Section 5705 is the court shall state and prepare such a statement for inclusion in the record. That's essentially the same thing. The disconnect here is that 5620 uses the word the court shall make a note in the minutes of the proceeding of finding, whereas 5705 doesn't state finding. It says basis. But as a matter of law, one of the bases that you need to send a child to the department is a finding that the department is the least restrictive alternative. So when you read those two sections together like we're supposed to do, we can skew statutes as a whole. That language is there. And finally, I'd just like to conclude. Six days from now, this Court is going to be hosting a virtual mental health summit series. And one of the goals of this summit is to develop initiatives leading to the treatment of people with behavioral health disorders. People like JMA. Your Honors can take a step forward in achieving this goal by accepting JMA's arguments in this appeal. And unless Your Honors have any further questions, JMA would respectfully request that you reverse the appellate court's judgment. I thank Your Honors for your time. Thank you. Case number 45680, In Re JMA, State of Illinois v. JMA, will be taken under advisement and known as agenda number 16. Counsels, thank you very much for your arguments this morning. Mr. Mohler and Mr. Goldstein.